The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pittman, the briefs on appeal and arguments of counsel. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives or amend the Opinion and Award. Accordingly, the Opinion and Award by Deputy Commissioner Jan N. Pittman is affirmed.
This case was heard before Deputy Commissioner Pittman in Raleigh on 7 July 1994. A Pre-Trial Agreement entered into by the parties prior to the hearing in this matter is incorporated herein by reference. Following the hearing, the record in this matter was held open to allow the parties an opportunity to depose medical experts. Thereafter, upon the receipt of the depositions of Drs. Johnson and Whitney as well as proposed Opinions and Awards from counsel for the parties, the record was closed.
All objections raised during the depositions of Drs. Johnson and Whitney are ruled upon in accordance with the Opinion and Award rendered in this matter.
*********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
All stipulations contained in the aforementioned Pre-Trial Agreement are incorporated herein by reference.
Furthermore, a packet of medical records regarding treatment of the plaintiff was received into evidence at the time of the hearing as stipulated Exhibit 1 and a statement of plaintiff's made to the servicing agent on July 1, 1993 was received into evidence at the time of hearing as stipulated Exhibit 2.
*********
The Full Commission adopts the Findings of Fact found by the Deputy Commissioner, as follows:
FINDINGS OF FACT
1. Plaintiff is a 27 year old married male high school graduate who on or about June 2, 1993 was employed by defendant-employer as a carpenter's helper. Plaintiff had been so employed since February 1993.
2. On or about June 2, 1993, plaintiff was performing his regular job duties for defendant-employer which required him to pick up "2x10s" fourteen to eighteen feet in length. These 2x10s were heavy pieces of lumber weighing approximately fifty pounds each. During the course of his employment on June 2, 1993, plaintiff usually carried two of the 2x10s at one time. Plaintiff had been carrying the 2x10s basically all day on June 2, 1993. While picking up the last few 2x10s on June 2, 1993, plaintiff felt a pain in his neck. The fact that plaintiff experienced a pain in his neck when picking up the last few 2x10s on June 2, 1993 constituted a specific traumatic incident of the work assigned. Plaintiff had experienced episodes of muscle spasms following an injury to his neck in 1989 and he initially thought that his neck pain would go away. After plaintiff felt this onset of neck pain, he continued his employment through the remainder of the day. Thereafter, plaintiff returned to work for defendant-employer on Thursday and Friday; however, plaintiff found it difficult to perform his regular work duties due to increasing neck and right arm pain.
3. On Friday, June 4, 1993, plaintiff informed defendant-employer that he needed to seek medical treatment of his worsening neck and right arm pain.
4. On Friday, June 4, 1993, plaintiff saw Christopher Johnson, D.C. to whom he related a history of experiencing an on-the-job injury on June 2, 1993 following the "continuous lifting of heavy material." Examination on June 4, 1993 was indicative of muscle spasm in the cervix and upper thoracic spine area and palpitation produced pain in plaintiff's neck. Dr. Johnson excused plaintiff from work activities and continued to treat plaintiff's condition conservatively. However, as a result of the plaintiff's continuing symptoms, Dr. Johnson subsequently referred plaintiff to Dr. Whitney, a neurologist.
5. Thereafter on June 16, 1993, plaintiff was seen by Dr. Whitney who felt that plaintiff was exhibiting symptoms of possible cervical radiculopathy. Dr. Whitney initially treated plaintiff with steroids which improved plaintiff's condition. By June 24, 1993, plaintiff was capable of returning to light duty employment, but was unable to return to his regular work duties with defendant-employer. An EMG study performed on plaintiff's upper right extremity used to evaluate whether or not plaintiff was experiencing active radiculopathy or had sustained any nerve damage was within normal limits. By July 6, 1993, plaintiff had experienced further improvement in that he was no longer experiencing any right arm pain, although plaintiff did continue to complain of some neck and shoulder pain.
6. Plaintiff did not return to see Dr. Whitney after July 6, 1993 although Dr. Whitney did recommend that plaintiff have further evaluation for his continuing complaints in the form of an MRI of the cervical spine. Plaintiff did continue to receive medical treatment from Dr. Johnson until July 30, 1993.
7. As a result of the injury plaintiff sustained during the course of his employment with defendant-employer on June 2, 1993 plaintiff sustained an injury to his neck which necessitated medical treatment. The treatment rendered plaintiff for this condition by Drs. Johnson and Whitney tended to effect a cure, give relief and lessen plaintiff's disability. Furthermore, the medical evidence of record reveals that additional medical studies have been recommended for assessment of plaintiff's neck condition, and, at oral argument, Defendants' counsel said Defendants had agreed to an MRI.
8. As a result of the injury by accident plaintiff sustained on June 2, 1993, plaintiff was unable to engage in work activities for defendant-employer or any other employer from June 4 through July 20, 1993. This finding is in accordance with the testimony given by Dr. Johnson regarding the period of plaintiff's temporary total disability. On July 27, 1993, plaintiff returned to work with another employer earning the same or greater wages that he was earning during his employment with defendant-employer on June 2, 1993.
9. After July 27, 1993, plaintiff continued to be so employed until January 1, 1994 when he left North Carolina to return to live in New York. Although plaintiff was unemployed until the Spring of 1994, plaintiff became re-employed in March or April of 1994 in New York as a mechanic again earning the same or greater average weekly wages that he was earning during his employment with defendant-employer on June 2, 1993.
10. Plaintiff has sought medical treatment once since returning to New York seeing a chiropractor on that occasion. While the medical evidence of record reveals that plaintiff had not reached maximum medical improvement when last seen in July by either Drs. Whitney or Johnson, the medical evidence of record likewise does not support a finding that plaintiff was unable to engage in work activities after June 20, 1993 when Dr. Johnson released him to return to work without any restrictions being placed upon plaintiff's physical capacity. As the evidence fails to establish whether or not plaintiff has reached maximum medical improvement, no finding is made at this time regarding the permanent partial disability, if any, plaintiff may have sustained as a result of the injury giving rise hereto.
11. Although plaintiff had previously sustained an injury to his neck in 1989, and would on occasion experience muscle spasms in his neck area between 1989 and 1993; plaintiff had recovered from his 1989 injury and was capable of engaging in construction work. In fact, as the evidence of record indicates, plaintiff had been regularly performing construction work for defendant-employer from the date of his initial employment in February 1993 until the date of his injury on June 2, 1993.
* * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On or about June 2, 1993, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in that he sustained a neck injury (back) as a result of a specific traumatic incident of the work assigned. G.S. § 97-2 (6).
2. Plaintiff is entitled to temporary total disability compensation benefits at the rate of $186.76 per week from June 4, 1993 through July 20, 1993 for the temporary total disability he sustained as a result of the injury by accident giving rise to this claim. G.S. § 97-29.
3. Plaintiff is entitled to have defendants provide all medical treatment arising from this injury by accident to the extent said treatment tends to effect a cure, give relief or lessen plaintiff's disability including the future diagnostic testing as recommended by Dr. Whitney. G.S. § 97-25; Hyler v. GTEProducts Co., 333 N.C. 258 (1993).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law the Full Commission affirms the holding of Deputy Commissioner Pittman and enters the following:
AWARD
1. Defendants shall pay compensation to plaintiff at the rate of $186.76 per week for the period commencing June 4, 1993 and continuing through July 20, 1993 for his temporary total disability. This compensation has accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident when bills for the same have been submitted to defendant-carrier and approved pursuant to procedures established by the Commission.
3. Defendants shall pay expert witness fees in the amounts of $80.00 to Dr. Johnson and $180.00 to Dr. Whitney.
4. An attorney's fee in the amount of 25% of the compensation awarded herein is hereby approved for plaintiff's counsel, which fee shall be deducted from the aforesaid award and paid directly to plaintiff's counsel.
5. Defendants shall pay the costs.
 S/ ____________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ____________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ____________________________ DIANNE C. SELLERS COMMISSIONER